UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
DAVID KAHAN :
: CASE NO. 1:08-CV-1682
Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Doc. Nos. 72, 75.]
WOODARD-CM, LLC, *et al.* :
:
Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this Opinion and Order, the Court addresses Defendant Forwoodco, LLC's ("Old Woodard's") motion to enforce the settlement agreement, [Doc. 72], as well as Plaintiff David Kahan's ("Kahan's") cross-motion to enforce the settlement agreement, [Doc. 75.] For the reasons described below, the Court **GRANTS** Plaintiff Kahan's motion to enforce the settlement and **DENIES** Defendant Old Woodard's motion to enforce the settlement.

**I. Background**

This case initially arose out of Plaintiff Kahan's claims of tortuous interference with prospective business relations, breach of contract, and accounting against Defendants Woodard-CM, LLC ("New Woodard"), Craftmade International, Inc. ("Craftmade"), and Old Woodard. [Doc. 1.] With his July 11, 2008 Complaint and request for a Temporary Restraining Order and Preliminary or Permanent Injunction, Kahan wished to (1) determine his right to work as a sales representative for competitors of New Woodard in the outdoor furniture business after the term of his contractual

-1-

Case No. 1:08-CV-1682
Gwin, J.

relationship with New Woordard expired on July 31, 2008; (2) recover damages and to enjoin the Defendants' alleged tortuous interference with his prospective business relations; and (3) determine the amount of and recover from the Defendants past and present commissions due to him. [*Id.*] On July 22, 2008, the Defendants opposed the Plaintiff's motion for a temporary restraining order, [Doc. 17], and on August 4, 2008 the Defendants answered the Complaint by denying the Plaintiff's allegations, [Doc. 36.]

On February 11, 2009, the parties attended a status conference. [Doc. 66.] Defendants New Woodard, Old Woodard, and Craftmade were jointly represented at the status conference by Squire Sanders & Dempsey ("Squire Sanders"). Plaintiff Kahan was represented at the status conference by Hahn Loeser & Parks, LLP ("Hahn Loeser"). Although the parties did not reach a settlement agreement at the status conference, they continued their negotiations following the conference.

The next day, February 12, 2009, the parties reached an agreement that was memorialized in an e-mail exchange between Squire Sanders and Hahn Loeser. [Doc. 76-3 at 27; Doc. 76-4 at 30.] In relevant part, this agreement contemplated that Plaintiff Kahan and the Defendants would mutually release all claims "from the beginning of time through the settlement . . . arising out of or in any way related to the subject matter of the lawsuit, the discovery conducted in the lawsuit and any issues raised or which could have been raised in the lawsuit." [Doc. 76-3 at 27.] According to the agreement, the actual language of the mutual releases would be "written to be as broad as possible." [*Id.*] The agreement further contemplated that the parties would "promptly prepare and execute a mutual release and settlement agreement" to memorialize their agreement; the parties also agreed to "immediate[ly] inform the court of this settlement." [*Id.*]

After the parties notified the Court of the settlement agreement, the Court, on February 18,

Case No. 1:08-CV-1682
Gwin, J.

2009, entered an Order stating that the case was settled and dismissed with prejudice and noting that the Court retained jurisdiction to resolve disputes concerning the settlement agreement. [Doc. 67.]

After some negotiations and revisions, on May 5, 2009, Squire Sanders delivered a final proposed draft of the settlement agreement that it deemed to be "entirely consistent with the 2/11 term sheet that [Hahn Loeser] prepared, and [to] completely satisf[y] all the terms of settlement to which the parties agreed." [Doc. 76-5 at 32.] On March 10, 2009, Hahn Loeser responded, agreeing to Squire Sanders's final proposed draft and requesting that Squire Sanders send a "clean execution copy so that we can ensure that our respective clients are executing identical counterparts, which we will promptly exchange . . . ." [Doc. 76-6 at 40.] Squire Sanders immediately complied with this request. [Doc. 76-7 at 42.]

On March 17, 2009, Hahn Loeser sent Squire Sanders a copy of the final settlement agreement (the "Final Agreement") signed by Plaintiff Kahan and by Hahn Loeser. [Doc. 76-8 at 44-50.] On March 27, 2009, Squire Sanders provided Hahn Loeser with a copy of the Final Agreement signed by Craftmade and New Woodard, as well as by Squire Sanders; this Agreement was not signed by Old Woodard, however. [Doc. 76-9 at 52-58.]

Through a series of communications that took place between March 19-27, 2009, Squire Sanders ultimately notified Hahn Loeser that it would not be able to obtain Old Woodard's signature on the Final Agreement. [Doc. 76-2 at 24.] In particular, on March 19, 2009, Squire Sanders indicated that a lawyer from Chicago, Paul W. Carroll, who represents Old Woodard and its affiliates but did not represent Old Woodard as counsel of record in this case, was requesting that additional terms be added to the Final Agreement. [*Id.*] Hahn Loeser informed Carroll of Plaintiff Kahan's position: that Kahan had relied on Squire Sanders's authority to negotiate the settlement agreement

-3-

Case No. 1:08-CV-1682
Gwin, J.

on behalf of all of the Defendants, including Old Woodard, and that Carroll's request was inappropriate, as the parties had previously reached a final settlement agreement that was fully enforceable. [Doc. 76-10 at 60-65.] Hahn Loeser, on Kahan's behalf, asked that Old Woodard execute the Final Agreement, but both Squire Sanders and Carroll reiterated Old Woodard's refusal to do so. [Doc. 76-2 at 24.] Carroll also stated that he would be representing Old Woodard in connection with any subsequent proceedings regarding the enforcement of the Final Agreement. [Doc. 76-10 at 61.]

On May 11, 2009, Defendant Old Woodard filed a motion to enforce the settlement between the parties, as it was memorialized in a February 11, 2009 e-mail. [Docs. 72, 73.] Old Woodard argues that the claim release language in the Final Agreement is broader than the language initially agreed to by the parties. In addition to releasing all claims through the date of settlement relating to the lawsuit, the claim release language in the Final Agreement releases all claims "arising out of or in any way relating to the *former engagement of Kahan as an employee or a sales representative of any of the Woodard Entities*[.]" [Doc. 73 at 3.] On May 21, 2009, Plaintiff Kahan cross-moved for enforcement of the settlement agreement between the parties, as it was memorialized in the Final Agreement. [Docs. 75, 76.]

## II. Discussion

A court construes settlement agreements as binding covenants subject to the essential requirements of contract law. *See, e.g.*, *Parrot Mktg., Ltd. v. Fineline Properties.com, Inc.*, No. 5:02-CV-1765, 2006 WL 2679576, at *4 (N.D. Ohio Sept. 18, 2006) (citing *State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 820 N.E.2d 910, 915 (Ohio 2004)). A district court has the inherent power to enforce an agreement entered into in settlement of litigation pending before it even if that

Case No. 1:08-CV-1682
Gwin, J.

agreement has not been reduced to writing. *See, e.g.*, Bowater N. Am. Corp. v. Murray Mach., 773 F.2d 71, 77 (6th Cir. 1985) (citation omitted).

To enforce a settlement agreement, the district court must find that the parties have reached an agreement with respect to the material terms. Brock v. Scheuner Corp., 841 F.2d 151, 154 (6th Cir. 1988) (citation omitted). Once the district court finds that there is an agreement on the material terms, the court must enforce those terms and may not alter them. *Id.*

Under Ohio law, the "purpose of contract construction is to effectuate the intent of the parties," which is "presumed to reside in the language they cho[o]se to employ in the agreement." R.J. Reynolds, 820 N.E.2d at 915 (quotation and internal citation omitted). In contract interpretation, a party's external objective manifestation of intent prevails over his private and unexpressed intent. A settlement agreement, like any other contractual arrangement, depends upon an objective, not a subjective, manifestation of intent. *See* Therma-Scan, Inc. v. Thermoscan, Inc., 217 F.3d 414, 420 (6th Cir. 2002); RESTATEMENT (SECOND) OF CONTRACTS § 212 cmt. a (1981); *see also* Constr. Interior Sys., Inc. v. Marriott Family Rest., Inc., 984 F.2d 749, 754 (6th Cir. 1993).

Faced with the unambiguous terms of a contract, a court will not "create a new contract by finding an intent not expressed in the clear language employed by the parties." Shifrin v. Forest City Enters., Inc., 597 N.E.2d 499, 501 (Ohio 1992). No legal or equitable remedy exists that will enforce an agreement never entered into, including an agreement based on a party's unexpressed wishes. Black v. Rudy, No. 78-CA-23, 1978 WL 216351, at *8 (Ohio Ct. App. Nov. 22, 1978).

In this case, the Court finds that the parties agreed on the material terms of the settlement and that the enforcement of the Final Agreement "would effectuate the intent of the parties." R.J. Reynolds, 820 N.E.2d at 915. First, the claim release language to which Defendant Old Woodard

Case No. 1:08-CV-1682
Gwin, J.

objects is consistent with the broad release language contemplated in the February 11, 2009 e-mail. Second, the fact that the Plaintiff and two of the Defendants, excluding Old Woodard, signed the Final Agreement (as did Hahn Loeser and Squire Sanders) strongly indicates that the Final Agreement encompasses the objective intent of the parties. *See Constr. Interior Sys., Inc.*, 984 F.2d at 754 (holding that the parties' external manifestations of intent, as indicated by agreement to the terms stated on the record, prevailed over the parties' unexpressed wishes). Finally, Old Woodard could have objected to the terms of the settlement agreement during the negotiation period or it could have informed the parties that Squire Sanders did not have the authority to negotiate the settlement agreement on its behalf. It did not take either of these steps, however. Thus, the Court will use its inherent power to enforce the terms of the settlement as they are expressed in the Final Agreement. *See, e.g.*, *Bowater N. Am. Corp.*, 773 F.2d at 77.

### III. Conclusion

For the reasons described above, the Court **GRANTS** Plaintiff Kahan's motion to enforce the settlement and **DENIES** Defendant Old Woodard's motion to enforce the settlement.

IT IS SO ORDERED.


Dated: May 28, 2009            *s/     James S. Gwin*
                               JAMES S. GWIN
                               UNITED STATES DISTRICT JUDGE